IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Glenda Barker-Evans, | ) | Civil Action No. 8:11-cv-1251-DCN-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

On July 30, 2007, Plaintiff protectively filed applications for DIB and SSI, alleging an onset of disability date of April 15, 2007. [R. 125–29, 118–24.] These claims were denied initially on October 2, 2007 [R. 68–71] and were denied on reconsideration by the Social Security Administration ("the Administration") on February 27, 2008 [R. 72–75]. On March 11, 2008, Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 87–88], and on February 2, 2010, ALJ Arthur L. Conover conducted a de novo hearing on Plaintiff's claims [R. 28–67].

The ALJ issued a decision on February 22, 2010, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 12–26.] The ALJ found Plaintiff had the following severe impairments: asthma/COPD, degenerative disc disease, borderline intellectual functioning, a personality disorder, and a schizoaffective disorder. [R. 17, Finding 3.] The ALJ further found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1. [*Id.*, Finding 4.] The ALJ specifically considered Listing 1.04 with respect to Plaintiff's degenerative disc disease; Listings 3.02 and 3.03 with respect to Plaintiff's COPD; and Listings 12.02, 12.03, and 12.08 with respect to Plaintiff's mental impairments. [R. 14.]

Next, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following restrictions: avoid concentrated exposure to harsh environmental irritants such as heavy dust and gases; work alone or in a small group where simple tasks are performed in a minimally supervised environment; and no interaction with the public as customers or team-type interaction with co-workers. [R. 18,

Finding 5.]  Based on Plaintiff's RFC, the ALJ found Plaintiff was unable to perform her past relevant work [R. 24, Finding 6], but jobs existed in significant numbers in the national economy Plaintiff could perform [R. 25, Finding 10].

Plaintiff requested Appeals Council review of the ALJ's decision [R. 10–11] and submitted additional evidence to the Council [*see* R. 2, 4–7], but the Council declined to review the decision [R. 1–7].  Plaintiff filed this action for judicial review on May 24, 2011. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence because he erred in his evaluation of the medical evidence.  [Doc. 18.]  Specifically, Plaintiff contends the ALJ

1.  improperly evaluated the opinion of Ron O. Thompson, Ph.D. ("Dr. Thompson") [*id.* at 23–28];

2.  improperly evaluated the opinion evidence of Bennie Henderson, FNP ("Nurse Henderson") [*id.* at 28–32];

3.  improperly ignored the opinion of Ashley McGee, M.D., Plaintiff's supervising, non-examining doctor who provided an opinion based on staff observation and treatment records ("Dr. McGee") [*id.* at 33–34]; and,

4.  improperly relied on the testimony of a vocational expert ("VE") without seeking explanation regarding potential conflicts that exist between the DOT and the  VE's testimony [*id.* at 34–37].

Plaintiff also contends new evidence submitted to the Appeals Council supports her contention that the ALJ's decision is not supported by substantial evidence. [*Id.* at 37–39.]

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence. [Doc. 19.] Specifically, the Commissioner contends the ALJ

1.    reasonably concluded Plaintiff could perform a range of light work [*id.* at 10–12];

2.    reasonably accorded Nurse Henderson's opinion little weight [*id.* at 12–14];

3.    did not err in evaluating Dr. Thompson's reports [*id.* at 14–15];

4.    reasonably relied on the VE's testimony to find Plaintiff could perform unskilled light jobs [*id.* at 15–20].

With respect to the new evidence presented to the Appeals Council, the Commissioner contends the additional evidence does not warrant remand. [*Id.* at 20–22.]

### STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than

a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42

U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision.  *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant

may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3]  With remand under sentence

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders'* construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S.

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings

---

617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A. *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

**B.**     *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.**     *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant

disabled without considering the claimant's age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5]  20

---

[4]Residual functional capacity is "the most [a claimant] can do despite [his] limitations."  20 C.F.R. §§ 404.1545(e), 416.945(a)(1).

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a; 416.969a.  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  *Id.*

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir.

1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III. Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)). If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence. *Craig*, 76 F.3d at 590. Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See id.* (holding there was

sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d), 416.927(d). In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(e), 416.927(e). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

14

## IV. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V. Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as

a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman*, 829 F.2d at 518. The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself,

support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI. Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb

credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

### Weight Assigned to Opinion of Consultative Clinician Ron O. Thompson, Ph.D.

Plaintiff contends the ALJ improperly evaluated Dr. Thompson's opinion because the ALJ misstated and failed to weigh Dr. Thompson's opinion that Plaintiff had limitations that would prohibit work.  [Doc. 18 at 23–28.] The Commissioner contends Dr. Thompson never opined Plaintiff could not work and, instead, simply stated Plaintiff would have limitations were she to work.  [Doc. 19 at 14.]  Additionally, the Commissioner contends that, after reviewing Dr. Thompson's assessments, state agency experts Drs. Price and Ronin concluded Plaintiff retained the residual functional capacity to perform some work, and the ALJ reasonably accorded those opinions great weight.  [Doc. 19 at 14–15.]  For the reasons stated below, the Court agrees with Plaintiff.

The regulations require that all medical opinions in a case be considered.  20 C.F.R. § 404.1527(b).  Medical opinions are evaluated pursuant to the following non-exclusive list:

> (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.

*Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).

Here, the ALJ failed to provide a discussion that allows the Court to determine what weight the ALJ assigned to Dr. Thompson's opinion or whether the ALJ considered Dr.

Thompson's conclusion that Plaintiff would consciously or unconsciously find a way to get involved in problems with authority or coworkers that might lead to termination.

Dr. Thompson performed a psychological evaluation of Plaintiff on September 18, 2007. [R. 454–56.] Plaintiff presented with a combined mood of anxiety and depression of moderate intensity. [R. 454.] She indicated she did not like authority figures; quit lots of jobs because people disrespected her; had multiple suicide attempts; grew up in an alcoholic and drug addicted family; and had a history of self mutilation, multiple psychiatric hospitalizations, and sexual and physical abuse. [*Id.*] Dr. Thompson estimated Plaintiff's level of intellectual functioning to fall in the high borderline to low-average range. [R. 455.] Dr. Thompson diagnosed Plaintiff with dysthymic disorder, early onset; signs and symptoms of cyclothymic disorder, but does not appear to meet the criteria for bipolar disorder; and personality disorder with antisocial and borderline features. [R. 456.] Dr. Thompson concluded,

> This 35-year-old female appears to be suffering from anxiety and depression cycles of moderate intensity, complicated by a long history of dysthymia, behavior disorder, self-mutilation and suicidal gestures. Her stress []coping skills are minimal and likely could not sustain her in her chosen occupation of waiting on customers in restaurants. She appears to have given up on seeking work and does not appear motivated to do anything, but sleep as a protecting mechanism from the stressors that she does not appear able to manage. Attention and concentration appears problematic for her as she is irritable and short circuits easily. I believe if she were to find employment, she would consciously or unconsciously find a way to get involved in problems with authority or coworkers that would create difficulty to the point where she would no longer be employed by them. I believe she could manage benefits in her own best interest if she were awarded them. She does continue to use marijuana and I questioned whether or not she really has stopped using marijuana given her current mood and reported stressors.

19

[*Id.*]

Dr. Thompson performed a second evaluation on January 21, 2008. [Doc. 541–43.] He noted Plaintiff presented with a dysphoric mood and affect that was initially constricted, but brightened to almost full range and depth. [R. 541.] While she admitted to vague hallucinatory activities and indicated she had been diagnosed with bipolar disorder, Dr. Thompson did not believe Plaintiff met the criteria for bipolar disorder but believed she had signs and symptoms of cyclothymia and personality disorder. [*Id.*] Dr. Thompson indicated Plaintiff's stress coping skills were quite poor and that she displayed these by overreacting to mild uncomfortable stimuli and was quite temperamental. [*Id.*] Dr. Thompson diagnosed Plaintiff with dysthymic disorder, early onset; signs and symptoms of cyclothymic disorder; and personality disorder with antisocial and borderline features. [R. 543.] Dr. Thompson concluded,

> This 35-year-old female appears exactly as she did previously. It appears that her temperament and poor judgment and perception of the actions and intentions of others create quick distention between her and other[s] socially and in the work place. Her stress coping skills are very poor and she does not appear overly motivated to seek employment. If she were to find employment, it would appear she would consciously or unconsciously overreact and become caustic with her employer or co-workers or possibly the public[,] creating terminal problems vocationally for her. [She d]enied using marijuana currently, but I'm not really clear whether or not she was actually being forthcoming. It appears that [the] most significant impediment[s] for vocational functioning are related to personality disorder and mostly to her general medical condition, but this is a medical opinion and I will defer to a qualified physician for that opinion. She should be able to manage benefits in her own best interest, if they are awarded to her.

[*Id.*]

With respect to Dr. Thompson's opinion, the ALJ noted:

> The claimant underwent a consultative examination on January 21, 2008, which was performed by Ron O. Thompson, Ph.D. On exam her thought process was goal-directed and relevant with no circumstantiality or tangentiality; there were no signs or symptoms of any eccentric thought process or psychotic mentation; and she tended to embellish signs and symptoms slightly by verbal expression but was as forthcoming as she was capable of being. She reported that she was able to drive to the store and shop; she denied sleep problems with Seroquel and her appetite was fair. Dr. Thompson's impression revealed early onset of dysthymic disorder, signs and symptoms of a cyclothymic disorder, and a personality disorder with antisocial and borderline features. Dr. Thompson opined that the claimant's most significant impediment for vocational functioning are related to a personality disorder and her general medical condition (Exhibit 27F, pages 2 and 3).

[R. 22.] First, the ALJ failed to mention Dr. Thompson's conclusion that Plaintiff "would consciously or unconsciously overreact and become caustic with her employer or co-workers or possibly the public[,] creating terminal problems vocationally." Additionally, the ALJ failed to include any discussion of how he weighed Dr. Thompson's opinion. Moreover, while the ALJ stated he considered the opinions of state agency psychological consultants Debra C. Price, Ph.D., and Dr. Robbie Ronin [R. 23], who both opined Plaintiff had the ability to relate appropriately with co-workers and supervisors [R. 378 (Dr. Price's opinion that Plaintiff "is able to relate appropriately to co-workers and supervisors but, due to characterological issues, she would be best suited for a work setting with limited public contact); R. 560 (Dr. Ronin's opinion that Plaintiff "has the ability to accept instructions and respond appropriately to criticism from supervisors" and "can interact appropriately with supervisors and coworkers")], he did not indicate how he weighed these opinions or

considered their findings in light of Dr. Thompson's seemingly inconsistent findings.[6] Accordingly, the Court is left to guess as to the weight the ALJ assigned to Dr. Thompson's opinion and why the ALJ failed to consider the portion of Dr. Thompson's opinion relating to Plaintiff's limitations in working with others,[7] and the Court cannot conclude the ALJ's decision is supported by substantial evidence. Accordingly, this case should be remanded.

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ's treatment of Dr. Thompson's opinion is a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ. However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error, specifically Plaintiff's allegation that the ALJ improperly discounted Nurse Henderson's opinion; ignored Dr. McGee's opinion; and relied on the testimony of the VE without seeking explanation regarding potential conflicts that exist between the DOT and the VE's testimony.[8] Additionally, because the Court is remanding the case for a proper analysis of the medical opinions, the ALJ is directed to consider the new evidence presented to the Appeals Council.

---

[6]Although not specifically stated, it seems the ALJ afforded the state's non-examining clinicians more weight than Dr. Thompson, who examined Plaintiff. If the ALJ afforded the non-examining clinicians more weight than Dr. Thompson, the ALJ should have explained the reason behind his assignment of weights between the clinicians. *See* 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").

[7]To the extent the ALJ's failure to consider the portion of Dr. Thompson's opinion relating to Plaintiff's limitations in working with others is an indication the ALJ discredited this portion of Dr. Thompson's opinion, the ALJ should have explained his reasoning for discrediting the opinion and cited contradictory evidence. Without such explanation, this Court cannot determine whether the decision is supported by substantial evidence.

[8]Further, because the Court finds the ALJ's analysis of Dr. Thompson's opinion is a sufficient basis for remand, the ALJ should also reconsider the limitations posed to the VE.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this recommendation.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

May 18, 2012
Greenville, South Carolina